Craig H. Durham
**FERGUSON DURHAM, PLLC**
223 N. 6th Street, Suite 325
Boise, Idaho 83702
208-724-2617
chd@fergusondurham.com

Richard Alan Eppink
**WREST COLLECTIVE**
812 W. Franklin
Boise, ID 83702
208-371-9752
ritchie@wrest.coop

*Attorneys for Defendant Brooks Roberts*

# UNITED STATES DISTRICT COURT

# DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>BROOKS ROBERTS,<br><br>Defendant. | Case No. 1:23-cr-00053-DKG-2<br>Case No. 1:23-mj-00108-DKG-2<br><br>**BRIEF IN SUPPORT OF MOTION FOR JURY TRIAL ON ALL COUNTS** |

A consolidated trial in both of these cases is set for November 6, 2023. Between the two, the government charges Brook Roberts with eight misdemeanors. Three of them—counts 1, 2, and 3 in case no. 23-cr-53—are Class A misdemeanors, and so Mr.

1

Roberts has a clear constitutional right to a jury trial on those counts. *Baldwin v. New York*, 399 U.S. 66, 69 (1970). The remaining five counts each carry potential penalties of up to six months imprisonment, up to a $500 fine, or both, plus statutory probation that could include banishment from federal public lands. *See* 36 CFR § 261.1b; 16 USC § 551. The severity of those potential punishments make those counts more than just petty offenses. But even to the extent that the Constitution does not guarantee a jury trial on those counts, this Court has discretion to hold a jury trial on them. *United States v. Rodriguez*, No. 1:10-CR-120-MHW, 2010 WL 11531202, at *1 (D. Idaho Oct. 15, 2010) ("[T]here is no rule or precedent that prohibits a jury trial absent a constitutional requirement; the Court has the discretion to allow jury trials when it finds the facts warrant such."). The Court should have the jury, which must be convened anyhow for the first three counts, render the verdict on all counts in both cases.

## THE NATURE OF THESE CASES[1]

There is nothing run-of-the-mill about the cases against Brooks Roberts. The evidence the defense is preparing for trial will show that Mr. Roberts and his family were among the casualties of the chaos that COVID wrought upon its arrival to Idaho in spring 2020. The family lost most of their income that May and, soon after, their rental home in Emmett when they were evicted. Their only means to survive without a home

---

[1] The following is based on discovery that the Government has provided so far and Mr. Roberts' independent investigation. It reflects what Mr. Roberts expects the evidence to show at trial.

2

were their vehicles, where they sought shelter from the elements as Mr. Roberts worked the night shift at Walmart, trying to labor the family's way back to some tenuous stability. They parked where they could stay out of the way, but the government hounded them from place to place. The few temporary emergency homeless shelters in the area were not only extremely hazardous due to the airborne pandemic still raging across the world at the time, but unavailable to Mr. Roberts in particular: not only do the number of homeless families in southwest Idaho exceed the capacity of those shelters, but the shelters are closed during the day and Mr. Roberts worked at night. Then, in summer 2022, Mr. Roberts suffered an injury at work that left him with disabilities making him especially unsuited for temporary emergency shelter, even had it been safe or available. But when the family began working with a homeless services agency around that time, the government chased them away yet again. They ended up near McCall, outside the geographic scope of the Boise services they'd accessed and where there were no social services or shelter at all for them.

  Isolated, iced in, and now unemployed, the family eked out a wretched subsistence. The government's response, rather than to help them reconnect with services needed to lift them out of extreme poverty, was to charge them all with crimes. Then, despite that the family was now under this Court's jurisdiction and aided by counsel, the government concocted a tragic scheme to arrest them. Exploiting the family's kindness and generosity, it plied a ruse, knowing the Roberts would be quick

3

to help a stranger. It sent two plainclothes officers to the door of the Roberts family's trailer to ask for a jump. As expected, Mr. Roberts' brother Timber came out right away to help. Once Timber was drawn away from the trailer, the plainclothes officers forced him to the ground. He cried out for help. Brooks wheeled out, believing this brother was being robbed or carjacked. But the officers failed to announce themselves as law enforcement and, fatefully, Brooks carried a revolver with him to protect his brother. When the officers saw the gun, they opened fire, blasting multiple rounds into Brooks' body and firing so willy-nilly that one of their live rounds went into the engine compartment of the running pickup Timber had positioned so he could hook up jumper cables.They kept shooting after Brooks lay defenseless in the mud. <u>They even shot him in the back</u>. A bullet lodged in his spine and doctors do not expect that he will ever again have any feeling below his waist. He no longer can control his bowels.

  The arrest warrant that visited this lifelong catastrophe upon Mr. Roberts was one to take him into custody on just two regulatory misdemeanors: camping on Forest Service lands for longer than allowed and occupying a developed recreation site for other than recreational purposes. The FBI has been investigating this so-called "officer-involved shooting," though Defendant's counsel have not yet seen the outcome of that investigation.

  Mr. Roberts has both necessity/justification defenses and constitutional defenses under the Eighth Amendment. "[T]he Eighth Amendment prohibits the imposition of

4

criminal penalties for sitting, sleeping, or lying outside on public property for homeless individuals who cannot obtain shelter." *Martin v. City of Boise*, 920 F.3d 584, 616 (9th Cir. 2019). Similarly, Mr. Roberts can show that staying on public property to survive was a lesser evil that prevented imminent harm to which he reasonably saw no legal alternatives, making out a necessity defense. *United States v. Perdomo-Espana*, 522 F.3d 983, 988 (9th Cir. 2008). Beyond the horrific shooting that Mr. Roberts suffered when arrested, these cases raise issues of major constitutional significance and substantial public interest, as evidenced by recent attention to this case by national organizations and media. *See, e.g.,* Ryan Suppe, "Arrests on 3 federal warrants lead to shooting near McCall; suspect injured," *Idaho Statesman*, May 25, 2023, https://www.idahostatesman.com/news/local/crime/article275626556.html; Drew Dodson, "Officer-involved shooting at parking lot," *McCall Star-News*, May 25, 2023; Drew Dodson, "West Face shooting details emerge," *McCall Star-News*, June 28, 2023; National Homelessness Law Center, "Federal Police Use Violent Force Against Family Living in Park – Pattern of Violence Continues," August 23, 2023, https://homelesslaw.org/federal-police-use-violent-force-against-family-living-in-park/; National Coalition for Housing Justice (same), https://nchj.org/federal-police-use-violent-force-against-family-living-in-park-pattern-of-violence-continues/; *cf.* Brad W. Gary, "Feds review shooting," *Spokesman-Review*, Nov. 22, 2009 (regarding *Rodriguez* case).

## ARGUMENT

This Court, with Judge Mikel Williams presiding, provided a jury trial on petty offenses in another case with striking similarities to this one. *Rodriguez*, 2010 WL 11531202 at *1. The defendant there, however, was only charged with a single Class B misdemeanor. *Id.* That case, like this one, was somewhat unusual. *Id.* It, too, involved law enforcement officers shooting the defendant, which left him wounded and hospitalized. *Id.* The federal government investigated that shooting as well, as the FBI is doing with the shooting of Mr. Roberts. *Id.* And that case also generated some public interest, as this one has. *Id.* This Court held that cases like these are "well-suited" for trial by jury, and "best tried by the collective decision-making of the community through the criminal jury process." *Id.*

The Court's exercise of discretion to hold a jury trial in that case is consistent with similar decisions in other cases involving only petty misdemeanors, as this Court noted there. In *United States v. Greenpeace*, for example, the defendant was charged with unlawfully boarding a ship, a petty misdemeanor carrying up to six months imprisonment. 314 F. Supp. 2d 1252, 1256, 1261 (S.D. Fla. 2004). Though the Court concluded that Supreme Court precedent precluded any constitutional right to a jury trial, it granted one anyhow. *Id.* at 1263. It noted that the case was unusual, and also noted that the defendant was planning a necessity or justification defense. *Id.* at 1264, 1265. *See also United States v. Beard*, 313 F. Supp. 844, 846 (D. Minn. 1970).

6

Not only are the grounds for a jury trial on the petty offenses here like the grounds in *Rodriguez* and *Greenpeace*, but there's another especially compelling reason to try all counts in this case to a jury: because there will be a jury at this trial already.. Counts 1–3 in case no. 23-cr-53 are Class A misdemeanors, each carrying penalties of up to 12 months imprisonment and, for Count 3, up to a $100,000 fine. 43 CFR § 2932.67(b)(1), 18 USC § 3571(b)(5), and 18 USC § 3581(b)(6) (Count 3); 43 CFR § 8360.0-7 (Counts 1 and 2). Mr. Roberts is indisputably entitled to a jury trial on each of those counts. *Baldwin*, 399 U.S. at 69 ("[N]o offense can be deemed 'petty' for purposes of the right to trial by jury where imprisonment for more than six months is authorized."); *see also United States v. Titus*, No. 2:14-CR-351 RTB, 2017 WL 876259, at *4 (D. Utah Mar. 3, 2017) (confirming constitutional right to jury trial for charge under 43 CFR § 2932.57, like Count 3 in case no. 23-cr53 here). Trying all counts to a the same jury does not require the Court to do anything extra (as it did in *Rodriguez* and *Greenpeace*), and will instead *preserve* judicial resources, as the Court will not have to make specific findings of fact on the petty misdemeanor counts. F.R.Cr.P. 23(c).[2]

Another reason to try these cases to a jury is the severe punishment that the government may seek against Mr. Roberts. In his brother's case, the government, in addition to signaling it will seek imprisonment, will banish Timber from all National

---

[2] * Defendant hereby requests that the Court, if it does not grant a jury trial on all counts, state its specific findings of fact in open court or in a written decision or opinion on all counts that are tried to the bench.

Forest and BLM lands throughout the United States for three years. (No. 23-mj-108, Dkt. 57, at *10.) But, now that Mr. Roberts must live forever with the grave and permanent disabilities that the shooting inflicted, his poverty is only more extreme. He may easily (and soon) find himself with no other place to sleep than public land. Therefore, the statutorily-authorized probationary terms in this case could themselves violate the Eighth Amendment. *Johnson v. City of Grants Pass*, 72 F.4th 868, 877 (9th Cir. 2023) ("[I]t is an Eighth Amendment violation to criminally punish involuntarily homeless persons for sleeping in public if there are no other public areas or appropriate shelters where those individuals can sleep."). Thus, even though the non-Class A misdemeanors here may be presumptively petty offenses, the other potential statutory penalties Mr. Roberts faces include the possibility of unconstitutionally cruel and unusual punishment. As applied to Mr. Roberts, then, these otherwise petty offenses are sufficiently severe that he is entitled to a jury as a matter of constitutional right. *See United States v. Nachtigal*, 507 U.S. 1, 4 (1993) (holding that a defendant may overcome the petty offense presumption by showing that additional possible penalties make the offense a serious one).

There's still another good reason to hold a jury trial on all counts here, too, and that's the plain text of the United States Constitution. The Supreme Court has recently reemphasized that constitutional interpretation should hew carefully to the Constitution's actual text and begin with "the language of the instrument." *Dobbs v.*

*Jackson Women's Health Org.*, 142 S. Ct. 2228, 2244-45, 2266 (2022). The text of the Sixth Amendment provides that "[i]n *all* criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury." United States Const. am. VI (emphasis added). And in the Constitution's main body, Article III likewise provides that "[t]he Trial of *all* Crimes, except in Cases of Impeachment, shall be by Jury." United States Const. art. III, § 2, cl. 3 (emphasis added). Recent historical research, too, undercuts prior justifications for a petty offense exception. *See* Andrea Roth, *The Lost Right to Jury Trial in "All" Criminal Prosecutions*, 72 DUKE L.J. 599, 656–661 (2022). Though this Court may remain bound by the existing Supreme Court precedent establishing the petty offense exception, it should still take this opportunity to flag the exception as both textually and historically infirm. Better still, the Court should avoid the constitutional issue in the first place, by exercising its discretion, just as it did in *Rodriguez*, to grant a jury trial on all counts.

## CONCLUSION

The Court should grant Mr. Roberts' motion for a jury trial on all counts.

Respectfully submitted,

/s/ Richard Eppink

/s/ Craig H. Durham

Attorneys for Brooks Roberts